## CIRCUIT COURT OF HENRICO COUNTY

Talley Neon

v.

Board of Zoning Appeals

August 3, 1976

Case No. 76-C-1

By JUDGE E. BALLARD BAKER

The question is the meaning of § 17.976 of the zoning ordinance, a part of § 17.9 relating to "Signs."

The first sentence permits "outdoor advertising signs and structures not exceeding 500 square feet in area nor two signs per facing." The second sentence puts a 25 foot height limit on an "outdoor advertising sign." The third sentence provides, "There may be no more than one outdoor advertising sign or structure on a lot of 75 feet or less and only one additional sign for each additional 75 feet of lot frontage."

The words "outdoor advertising sign," "structure," "sign," and "building" are defined in Article 2 of the ordinance. An "outdoor advertising sign" is "a structure including a billboard, having an area of 500 square feet or less . . . ." A "structure" is "anything constructed by an assembly of materials, the use of which requires a fixed location on the ground, or attached to something having a fixed location on the ground." A "sign" is a structure or device carrying an announcement, etc., with certain displays not having an advertising message being excluded. A "building" is a structure having a roof, etc.

The precise problem relates to the meaning of "structure" in the third sentence. Does it mean an outdoor advertising structure, as Talley Neon argues, or does it mean a building as the Director of Planning ruled?

Both parties seem to agree that "structures" in the first sentence is modified by "outdoor advertising" and does not include a building. It can be argued that such interpretation makes the word "structures" unnecessary. However, that interpretation is more reasonable than one which would have a sentence relating to "signs permitted . . ." include a building of less than 500 square feet. In any event, the problem here is in the third sentence.

The third sentence is a limitation. No more than "one outdoor advertising sign or structure" can be placed on a lot 75 feet or less. Here again appears the argument that if "outdoor advertising" modifies "structure" then the word "structure" is unnecessary because an "outdoor advertising sign" includes a structure. From this it is urged that "structure" as used here prevents an outdoor advertising sign on a 75 foot lot with a building.

This argument gives to "structure" in the third sentence a different meaning from that which it seems to have in the first sentence. It also requires that the words "outdoor advertising" be limited to modify only the word "sign" in the phrase "outdoor advertising sign or structure." It further raises the question of why the word "building," which is defined in the ordinance, was not used if that is what was intended.

Of significance is the fact that the ordinance provisions applicable to B-3 include among "Principal Uses Permitted" "Outdoor advertising signs and structures as regulated in Section 17.9 (signs)." Article 10, Section 17.97, of which 17.97b is a part, is entitled "Signs permitted in B-3 Business and M-1, M-2 and M-3 Industrial Districts."

> Zoning laws should be given a fair and reasonable interpretation in the light of the manifest intent of the legislative body enacting them, the object sought to be attained, the natural import of the words used in common and accepted usage, the setting in which such words are employed, and the general structure of the ordinance

as a whole . . . *Mooreland v. Young*, 197 Va. 771, at 775.

In 82 Am. Jur. 2d, *Zoning*, the following appears:

> Although it is stated in some cases that a zoning law should receive a liberal construction, or a liberal construction in favor of the municipality, it has more generally been held or stated that zoning laws and ordinances should be strictly construed or strictly construed in favor of the property owner, the same as other laws which are in derogation of common-law rights as to the use of private property, or which describe penalties for the violation thereof.

Here, in a separate section of the ordinance dealing with "Signs" and under a specific section entitled "Signs permitted in B-3 Business . . ." the ordinance permits "Outdoor advertising signs and structures not exceeding 500 square feet in area . . ." Two sentences later, in the same section, appears the limitation, "There may be no more than one outdoor advertising sign or structure on a lot of 75 feet or less . . . ." The section is talking about signs; normal construction has "outdoor advertising" modifying "sign" and "structure." A principal use in B-3 is stated as "outdoor advertising signs and structures . . ." To interpret "structure" to include "building" is a strained and not reasonable interpretation.

Consequently, this Court cannot agree with the interpretation given by the Director of Planning in his letter of August 18, 1975. Because of the language of the ordinance, which I feel is clear, and because the reason assigned by the Board in denying the application is not the same as that given by the Director, I do not reach the question of the weight to be given the administrative interpretation.

The Board, by letter of December 15, 1975, denied talley Neon's appeal and "upheld the interpretation of the Director of Planning" by finding:

> that outdoor advertising structures are a principal use and since the Ordinance only permits

one principal use on a piece of property, unless specifically approved by the Planning Commission, that such outdoor advertising structure cannot be placed on the property with other principal uses.

While the Board's letter states that it upheld the Director's interpretation, and its counsel argues the same, it is not clear that it decided that "structure" includes "building."

As indicated, "Outdoor advertising signs and structures" are a principal use in B-3. However, included in the definition of outdoor advertising sign is a statement that it "directs attention to a business commodity, service or entertainment not necessarily related to the other uses permitted on the premises upon which the structure is related . . ." This certainly implies that an outdoor advertising sign can be placed on a lot which has another use. Where is the language which permits only one principal use?

The only reference to such a limitation in the transcript and in the briefs is to Section 17A.12c. Section 17A relates to "Plan of Development." Section 17A.12 states the uses requiring a plan of development. This Court is unable to fit the applications here to anything in 17A.12 and can find nothing in the ordinance which supports the position.

Consequently, it seems to me that the applications cannot be denied for any reason stated, and must be granted. This does, of course, permit "an eyesearing total of 800 square feet of signs on a 75 foot lot . . ." as the County Attorney points out, when a business sign is placed on the lot with the advertising sign. It also permits the owner of a small home located in what has become a B-3 district the right to receive some income by allowing an advertising sign to be placed on his residential property.

Counsel are requested to submit an order in accord, reversing the action of the Board in rejecting the application for the four sign permits.